FILED
OCT 2 2 2004
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

WYMAN OSBORN and ANDREA OSBORN,

        Plaintiffs,

  v.

METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation; and FIRST AMERICAN SPECIALTY INSURANCE COMPANY, a California corporation,

        Defendants.
_____/

NO. CIV. S-04-1693 LKK/KJM

O R D E R

**TO BE PUBLISHED**

    Plaintiffs, Wyman Osborn and Andrea Osborn, brought suit in the Superior Court of the State of California against two insurance companies, Metropolitan Life Insurance Company ("Met Life") and First American Special Insurance Company ("First American"). Wyman Osborn asserts against Met Life a breach of duty of good

////
////

23

1

faith and fair dealing claim and a breach of contract claim.[1] Against First American the Osborns assert identical claims.[2]

Defendant Met Life answered and asserted twenty four affirmative defenses, among them, improper joinder of both plaintiffs and defendants. Defendant Met Life then removed the action,[3] arguing that plaintiffs fraudulently joined First American and Met Life. The matter is before the court on plaintiffs' motion to remand.

## I.

## FACTS[4]

Plaintiff Wyman Osborn alleges that he paid premiums and performed all acts necessary to ensure coverage under the disability policy issued to him by Met Life. Pl.'s Compl. at ¶ 5.

////

---

[1] Wyman Osborn had a disability insurance policy with Met Life.

[2] Wyman and Andrea Osborn have homeowner's insurance issued by First American.

[3] Defendants initially removed the matter to the wrong division of the Eastern District (Fresno). The case was transferred from Fresno to this court.

[4] The facts are drawn from plaintiffs' complaint and all papers related to the motion to remand. The Ninth Circuit has explained that generally in deciding remand motions it is generally proper to "look only to a plaintiff's pleadings to determine removability." Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998)(citation omitted). The court, however, has also held that "[w]here fraudulent joinder is an issue, we will go somewhat further. The Defendant seeking removal to the federal court is entitled to present facts showing the joinder to be fraudulent." Id. (citations omitted). In the instant case, defendants argue that the misjoinder of defendants is so egregious as to constitute fraudulent joinder. Def.'s Opp'n at 5-6. Accordingly, the court may go outside the pleadings to determine whether joinder is fraudulent and whether remand is appropriate.

On January 31, 2003, Mr. Osborn notified Met Life that in September 2002, he had an accident. He claimed that he ran into a tree limb and that his primary diagnosis was cervical lumbar problems. Kaarela Decl. at ¶ 2; Def.'s Exh. 1. A claim form was sent to Mr. Osborn and received back by Met Life on February 18, 2003. In the returned form, Mr. Osborn claimed that he was injured when "on or about 9-25-02, I was chassing(sic) my dog in backyard when I ran under a tree I did not duck & knocked myself out running into a limb." Mr. Osborn further claimed that he experienced a "pinch in neck" when he reached or pulled to pick something up and that his right arm would go numb. Kaarela Decl. at ¶ 3. Finally, he maintained that he could not continue working as a concrete contractor. Id.

On March 21, 2003, Met Life sent Mr. Osborn a letter denying benefits. Def.'s Exh. 3.[5] On May 19, 2003, plaintiffs' counsel sent a letter to Met Life noting plaintiff's disagreement with Met Life's determination. Def.'s Exh. 4.

On March 13, 2002, the Osborns purchased a home located in Stockton, and in May, escrow closed on the residence. Plaintiffs aver that shortly after they moved into the home, they began to suffer a variety of serious symptoms,[6] id. at ¶ 8, which at that

---

[5] Met Life explained, inter alia, that the orthopedic surgeon they hired as a consultant on this matter advised the company that the normal recovery period for this type of injury was eight weeks. Id. at ¶ 4.

[6] The symptoms allegedly included fatigue, nasal congestion, recurrent sinus pain and infections, joint swelling, loss of sense of smell, disabling shortness of breath, sensitivity to chemical odors,

3

1  time were undiagnosed.

2  In July 2003, plaintiffs were seen by Dr. Vincent Marinkovich, an allergist, who ordered blood tests for both plaintiffs and concluded that their symptoms were the result of exposure to mold. Dr. Marinkovich suggested that plaintiffs move out of the residence and leave all of their belongings behind, which they did on or about August 9, 2003. Pl.'s Compl. at ¶ 10; Pl.'s Exh. B.

8  The plaintiffs allege that they paid premiums and performed all acts necessary to ensure coverage under their homeowner's insurance issued by First American. Id. at ¶ 6. Before moving out of their residence, plaintiffs submitted an insurance claim to First American. First American first confirmed that the Osborns' claim was covered, but then subsequently denied coverage. On August 25, 2003, plaintiffs complained to First American that its sudden change of position was unjustified because the company performed no analysis or testing to reach its conclusion. Pl.'s Compl. at ¶ 12.

18 On or about August 13, 2003, plaintiffs' counsel sent Met Life another letter enclosing a copy of a report by Dr. Marinkovich stating that Mr. Osborn had seen the doctor on July 23, 2003. Met Life obtained treatment records from Dr. Marinkovich which demonstrated that the first time Mr. Osborn had seen Dr. Marinkovich was on July 23, 2003. Kaarela Decl. at ¶ 6. Met Life continued to deny benefits.

---

26 whole body pain, joint problems and leg cramps.

4

## II.

## STANDARDS

28 U.S.C. § 1447(c) provides that a case removed from state court should be remanded if it appears that it was removed improvidently. The burden is on the party seeking to preserve removal to establish the existence of federal subject matter jurisdiction. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "Because the 'removal statutes are strictly construed against removal,' Libhardt v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979), generally speaking, doubts about removal must be resolved in favor of remand." Dodd v. John Hancock Mut. Life Ins. Co., 688 F.Supp. 564, 566 (E.D. Cal. 1988).

## III.

## ANALYSIS

Met Life argues that they are entitled to remove the suit because plaintiffs' claim against it was not properly joined with the claims against First American. Met Life argues that the court should ignore First American's citizenship[7] because of the asserted misjoiner. That is, Met Life contends that the complaint really pleads two separate actions - one against First American that is not removable, and one against it that is removable. Accordingly, they maintain, plaintiffs' motion to remand should be denied.

////

---

[7] First American is a California corporation.

1 Plaintiffs respond that they properly joined Met Life and First
2 American under the California rule of permissive joinder.
3     Met Life relies on <u>Tapscott v. MS Dealer Service Corp.</u>, 77
4 F.3d 1351 (11th Cir. 1996), <u>abrogated on other grounds</u>, <u>Cohen v.
5 Office Depot, Inc.</u>, 204 F.3d 1069 (11th Cir. 2000), which held that
6 misjoinder of claims may be as fraudulent as joining defendant
7 parties who have no real connection with the controversy. I am,
8 of course, not bound by the Eleventh Circuit and, as discussed
9 below, entertain substantial doubts as to propriety of the Tapscott
10 doctrine. Moreover, assuming arguendo that a "fraudulent
11 misjoinder" doctrine is viable, defendant has not met its burden
12 of showing that plaintiffs fraudulently joined the two defendants.
13 **A.   "FRAUDULENT MISJOINDER"**
14     Diversity jurisdiction under 28 U.S.C. § 1332 requires
15 complete diversity, i.e. every plaintiff must be diverse from every
16 defendant. An action may nonetheless be removable if joinder of
17 the non-diverse parties is fraudulent. Stated differently,
18 fraudulently joined defendants will not defeat removal on diversity
19 grounds. <u>McCabe v. Gen. Foods Corp.</u>, 811 F.2d 1336, 1339 (9th Cir.
20 1987).
21     The Ninth Circuit has explained that "fraudulent joinder is
22 a term of art. If the plaintiff fails to state a cause of action
23 against a resident defendant, and the failure is obvious according
24 to the settled rules of the state, the joinder of the resident
25 defendant is fraudulent." <u>Ritchey</u>, 9 F.3d at 1318 (quoting <u>McCabe</u>,
26 811 F.2d at 1987). Here, however, defendants ask this court to

6

adopt a new doctrine, procedural misjoinder. Below, I explain why I doubt the appropriateness of the doctrine, and why, in any event, given the pleading, remand is proper.

The Ninth Circuit has not found occasion to address, much less adopt the <u>Tapscott</u> holding, and thus, I must engage in an independent evaluation of its propriety. In <u>Tapscott</u>, a putative class action was removed. Numerous classes of defendants were joined under Federal Rule 20.[8] The Eleventh Circuit held that the factual commonality among the plaintiffs' claims against the different classes of defendants was not sufficient to satisfy Federal Rule of Civil Procedure 20. The court then held that egregious misjoinder of parties, as measured by Rule 20 standards, amounted to fraudulent joinder, permitting the court to disregard the citizenship of the non-diverse defendants in a removed action.

Citing <u>Tapscott</u>, the Fifth Circuit adopted the misjoinder of parties theory. <u>See</u> <u>In re: Benjamin Moore & Co.</u>, 309 F.3d 296, 298 (5th Cir. 2002); <u>and</u> <u>see</u> <u>In re: Benjamin Moore & Co.</u>, 318 F.3d 626, 630-31 (5th Cir. 2002).[9] Since the <u>Tapscott</u> and <u>Benjamin Moore</u> decisions, district courts in the Fifth, and Eleventh Circuits, being bound, have followed the fraudulent misjoinder doctrine, as

---

[8] Rule 20 of the Federal Rules of Civil Procedure is identical to Rule 20 of the Alabama Rules of Civil Procedure. <u>See</u> <u>Tapscott</u>, 77 F.3d at 1355, n.1.

[9] Although the misjoinder in <u>Tapscott</u> involved the egregious misjoinder of defendants, other courts have applied this theory to the misjoinder of plaintiffs. <u>See</u>, e.g., <u>Koch v. PLM Int'l</u>, No. Civ. A. 97-0177-BH-C, 1997 WL 907917, at *2 (S.D. Ala. September 27, 1997); <u>Lyons v. The Am. Tobacco Co., Inc.</u>, No Civ. A. 96-0881-BH-S, 1997 WL 809677 at *4 (S.D. Ala. Sept. 30, 1997).

7

has a district court in the Seventh Circuit.

Professors Wright, Miller, and Cooper have characterized the Tapscott "fraudulent misjoinder" theory as a "new concept" that "appears to be part of the doctrine of fraudulent joinder." WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: Jurisdiction 3d § 3723 at 656. They observe that the doctrine adds to the complexity of a federal court's decision as to removal, and note that even in the Eleventh Circuit not all procedural misjoinder rises to the level of fraudulent joinder. They posit that "numerous additional decisions will be needed to clarify" the distinction between which misjoinder claims rise to the level of "egregiousness" justifying a refusal to remand. Id. They further suggest that an aggrieved defendant could avoid the confusion and complexity created by this standard by seeking relief from the misjoinder in state court and then removing to federal court. Id.

My own judgment is that the last thing the federal courts need is more procedural complexity. I thus conclude that the better rule would require Met Life to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court.[10]

---

[10] As Wright, Miller, and Cooper note, the time limit for removal would not affect a defendant's ability to have the misjoinder issue resolved in state court first. "Removal is not possible until the misjoined party that destroys removal jurisdiction is dropped from the action, the thirty-day time limit for removal (but not the overall one-year limit for diversity cases) would not begin to run until that had occurred and thus a requirement that misjoinder be addressed in the state court would

1  Moreover, application of Tapscott raises other unnecessary
2  difficulties. Since the decision, those following it have
3  questioned how to apply the doctrine and whether, when considering
4  the joinder of parties, a court should rely on Rule 20 of the
5  Federal Rules of Civil Procedure or its state law counterpart. In
6  some cases, where the federal rule of procedure on joinder tracks
7  the corresponding state rule, the question would not have a
8  practical import. In states such as California, however, the
9  state's rule permitting joinder is broader than the federal rule.[11]

10  In sum, because there appears to be no reason to develop a
11  fraudulent misjoinder theory, and because of the uncertainty as to
12  how such a theory should be applied, I respectfully decline to
13  apply it. This conclusion is supported by the well-recognized
14  doctrine that a removing party bears a heavy burden of persuasion
15  and that if there is any doubt as to whether removal was proper,
16  remand is required. Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th
17  Cir. 1996). For all the above reasons I conclude that plaintiffs'
18  motion to remand should be granted.
19  ////
20  ////

---

not impair the ability of an individual to remove an action following the elimination of the improperly joined party." WRIGHT, MILLER, AND COOPER, Jurisdiction 3d § 3723 at 656.

[11] In Mississippi, which also has a more liberal joinder rule, the federal courts have been divided on the question. Compare Polk v. Lifescan, Inc., 2003 WL 22938056 (N.D. Miss. September 23, 2003)(applying Mississippi Rule 20); Coleman v. Conseco, 238 F.Supp.2d 804 (S.D. Miss. 2002)(applying Federal Rule 20).

9

B.   **UNDERLYING JOINDER QUESTION**

Because the question of fraudulent misjoinder is a question of first impression in this circuit, it is appropriate to note that even if I were to accept the doctrine, remand would be required. Below, I explain why.

To resolve the question of fraudulent misjoinder, I must first determine which joinder rule, state or federal, governs. Notwithstanding <u>Tapscott</u>'s application of Federal Rule 20, most courts looking at this issue have applied the state rule. This seems the better choice since the question is whether the parties were misjoined in state court. <u>See</u>, e.g., <u>Jackson v. Truly</u>, 307 F.Supp.2d 818, 824 (N.D. Miss. 2004). Indeed, application of the federal rules seems particularly inappropriate in these days of heightened sensitivity to federalism concerns. I thus conclude that, if the fraudulent misjoinder doctrine were to be adopted, the applicable joinder standard should be derived from state law.

Met Life argues that there is no difference between California Code of Procedure § 379 and the federal rule, because the state rule "virtually mirrors Rule 20." I cannot agree. California joinder rules have been construed liberally[12] and there are

---

[12] In 1927, the Legislature enacted Code of Civil Procedure ' 379 with the goal of liberalizing procedures for permissive joinder of defendants. <u>Landau v. Salam</u>, 4 Cal.3d 901, 904 (1971). The section reads:

(a) All persons may be joined in one action as defendants if there is asserted against them:

(1) Any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same

10

situations where the State's joinder rules would allow for permissive joinder of defendants while the federal rules would not. As pertinent here, in federal practice, all claims joined must arise out of the same transaction or series of transactions, but under California law, a common question of liability satisfies the party-joinder rules. See Judge Robert E. Jones, et al., Cal. Prac. Guide Civ. Pro. Before Trial Ch. 2-C, 2:222-23.

Here, plaintiffs have alleged a claim against defendants which they assert arises out of the same transaction or occurrence, i.e., the mold which plaintiffs claim caused their illness and required them to abandon their home. It appears irrelevant that Mr. Osborn originally based his disability claim on a collision with a tree limb. It is what plaintiffs assert, not what defendants ultimately prove, that a California court looking at misjoinder must consider. See Cal. Civ. Proc. Code & 379(a) ("All persons may be joined in one action as defendants if there is *asserted* against

---

    transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action; or

    (2) A claim, right, or interest adverse to them in the property or controversy which is the subject of the action.

(b) It is not necessary that each defendant be interested as to every cause of action or as to all relief prayed for. Judgment may be given against one or more defendants according to their respective liabilities.

(c) Where the plaintiff is in doubt as to the person from whom he or she is entitled to redress, he or she may join two or more defendants, with the intent that the question as to which, if any, of the defendants is liable, and to what extent, may be determined by the parties.

11

them . . ."). Plaintiffs are the masters of their complaint and their allegation that denial of coverage under both insurance policies and the mold contamination caused their injuries is sufficient. Put somewhat differently, as envisioned under Civ. Proc. Code § 379(a), plaintiffs contend that they have a right to relief against both Met Life and First American "jointly, severally, or in the alternative" which arises out of the mold contamination, and thus questions of fact common to both defendants will arise in the action.

In the alternative, plaintiffs argue that under Civ. Proc. Code § 379(c) they should be able to join the defendants in the same action because they are uncertain as to the extent each is liable for their injuries, including their emotional distress. Pl.'s Repl. at 5-6. Plaintiffs' argument is persuasive. In such cases, it appears to be California's law that the injuries sustained by plaintiff need not arise from the same transaction to justify joinder because the single or cumulative injury is sufficient to fulfill the requisite factual nexus. See Landau, 4 Cal.3d at 907.[13]

////
////
////

---

[13] This analysis demonstrates another reason to reject the theory of fraudulent misjoinder. While federal courts, by virtue of their diversity jurisdiction, are quite comfortable resolving state substantive law issues, we have no occasion to address state procedures. Adoption of the doctrine, however, will require mastery of an otherwise irrelevant body of law.

12

1    In sum, I conclude that this court does not have
jurisdiction over this case even given defendants' theory of
fraudulent misjoinder of claims.[14]

IV.

**ORDER**

For the foregoing reasons, the above-captioned case is hereby REMANDED to the Superior Court of the State of California in and for the County of San Joaquin.

IT IS SO ORDERED.

DATED: October 20, 2004.

*/s/ Lawrence K. Karlton*
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[14] Given my conclusions above, I need not consider the effect of Met Life's having removed to the wrong division of this court.

13

```
                               ndd
            United States District Court
                       for the
             Eastern District of California
                    October 22, 2004


              * * CERTIFICATE OF SERVICE * *

                              2:04-cv-01693


    Osborn

        v.

    Metropolitan Life In
```

_____

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on October 22, 2004, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

```
    William J Gorham III              AR/LKK (2)
    Mayall Hurley Knutsen Smith and Green
    2453 Grand Canal Boulevard
    2nd Floor
    Stockton, CA  95207-8253

    Lawrence E Butler
    Seyfarth Shaw LLP
    560 Mission Street
    Suite 3100
    San Francisco, CA  94105

    San Joaquin Superior Court
    222 E Weber Avenue
    Stockton, CA 95202-2709
    (Case # CV 023285)
```

* VAC SC 10/25/04 *

                                          Jack L. Wagner, Clerk

                                          BY: _____
                                              Deputy Clerk

```
                                                              mdk
                     United States District Court
                               for the
                     Eastern District of California
                          November 2, 2004


                    * * CERTIFICATE OF RESERVICE * *


                                        2:04-cv-01693


   Osborn

       v.

   Metropolitan Life In


   _____


I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  November 2, 2004, I RE-SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


       William J Gorham III                              AR/LKK
       Mayall Hurley Knutsen Smith and Green
       2453 Grand Canal Boulevard
       2nd Floor
       Stockton, CA  95207-8253

       Lawrence E Butler
       Seyfarth Shaw LLP
       560 Mission Street
       Suite 3100
       San Francisco, CA  94105

       San Joaquin Superior Court     (# CV 023285)
       222 E Weber Avenue
       Stockton, CA 95202-2709
       (w/certified copy)



                                        Jack L. Wagner, Clerk

                                        BY: _____
                                             Deputy Clerk
```